IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HEIDI JO SPRINGER, | ) | CASE NO. 1:13-CV-1248 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Heidi Jo Springer's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I.  PROCEDURAL HISTORY**

Plaintiff Heidi Jo Springer ("Plaintiff" or "Springer") filed an application for Disability Insurance benefits around May 8, 2009. (Tr. 62, 100-01). Springer alleged she became disabled on December 10, 2008 due to suffering from bipolar disorder and depression. (Tr. 123). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 65-68, 72-76).

1

At Springer's request, an administrative law judge ("ALJ") convened an administrative hearing on October 13, 2011 to evaluate her application. (Tr. 25-61). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE") also appeared and testified. (*Id.*). On October 28, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 12-21). After applying the five-step sequential analysis,[1] the ALJ determined Springer retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 7-8). The Appeals Council denied Plaintiff's request for review, making the ALJ's October 28, 2011 opinion the final decision of the Commissioner. (Tr. 1-6). Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal background information

Springer was born on November 9, 1962, and was 48 years old on the date the ALJ rendered his decision. (Tr. 62). Accordingly, at all relevant times, she was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). Plaintiff attended college for four or more years and has past relevant work as a nurse. (Tr. 52-3, 124, 127).

Plaintiff worked as a nurse from 1996 until 2008. (Tr. 124). Sometime around 2008, it appears Springer began taking Effexor to treat depression, and she alleges the medication contributed to a hypomanic episode. (Tr. 196). Thereafter, Plaintiff began demonstrating erratic behavior at work, which prompted her employer to conduct a drug screening. (*Id.*). Springer tested positive for marijuana, and as a result, was released from her employment. (*Id.*).

### B. Medical evidence[2]

On February 6, 2009, Springer underwent an initial psychiatric evaluation at Pathways, Inc. (Tr. 189-92). Plaintiff reported feeling depressed, anxious, and hopeless, with low motivation and energy. (Tr. 189). Springer was described as well groomed, demonstrating average eye contact, clear speech, and a logical thought process. (Tr. 190). Plaintiff did not report delusions, hallucinations, or self-abuse. (*Id.*). While Springer's mood was depressed and she displayed some impairment in attention, she had a full affect and was cooperative. (Tr. 191). Springer's diagnoses were bipolar disorder and depression, severe without psychotic features. (Tr. 192). She was deemed "markedly ill." (*Id.*). Plaintiff's Global Assessment of Functioning ("GAF") score was 50, indicating serious symptoms, and her highest GAF score in the last year

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

was 75, indicating only mild impairments in functioning.[3] (Tr. 191). Springer was prescribed medication and advised to follow-up in the upcoming weeks. (Tr. 192).

In November 2009, Springer underwent an "Adult Diagnostic Assessment Update" at Pathways conducted by Martha Yeager, an intake specialist. (Tr. 186-87). Plaintiff indicated that she had failed to follow-up with treatment because of depression. (Tr. 186). Plaintiff denied current suicidal ideation or plans, but complained of feeling as though she had nothing to live for. (*Id.*). She reported using alcohol three to four times per week and having around three or four drinks each time. (*Id.*). Ms. Yeager recommended that Springer continue medication management with Pathways, increase her coping and life management skills, and gain sobriety. (Tr. 187).

A December 8, 2009 progress note from Pathways stated that Plaintiff was "doing better—less depressed." (Tr. 193). Springer denied using alcohol over the past month. (*Id.*). Springer stated her anxiety was under control, and her treatment provider observed that her mood was improved. (*Id.*). Plaintiff's appearance, demeanor, thought process, perception, suicidal ideation, behavior, and cognition were all within normal limits. (*Id.*).

On January 10, 2010, Plaintiff was admitted to Windsor-Laurelwood Hospital ("Windsor-Laurelwood") for approximately eight days of inpatient psychiatric treatment. (Tr. 196-206).

---

[3] A GAF score "is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) (*citing* DSM-IV-TR at 34). A score of zero represents the most severe level of impairment in psychological functioning, and a score of 100, the most superior. *Id.* A GAF score in the range of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 503. A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A GAF in the range of 61-70 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 745 (6th Cir. 2011).

Plaintiff had been transferred to Windsor-Laurelwood upon referral from Lake Hospital, where she was brought in secondary to verbalization of suicidal ideation and alcohol intoxication. (Tr. 196). Due to Springer's expression of suicidal thoughts, worsening symptoms of depression, and ongoing troubles with chemical dependency, she was sent to from Lake Hospital to Windsor-Laurelwood for further stabilization and treatment. (Tr. 197). Upon admission, Plaintiff was diagnosed with depressive disorder (not otherwise specified), bipolar affective disorder (current episode mixed), alcohol dependence, and cannabis abuse. (Tr. 205). Her GAF score upon admission was 20, which indicated that she displayed some danger of hurting herself or others. (Tr. 205). Plaintiff was placed on a Valium protocol for treatment of alcohol-related withdrawal symptoms and her medications were adjusted. (Tr. 206).

Plaintiff informed Windsor-Laurelwood healthcare providers about her previous psychiatric treatment. (Tr. 203). She explained that after her initial consultation with Dr. Rakesh Ranjan at Pathways in February 2009, she struggled to comply with outpatient treatment because she felt humiliated. (*Id.*). Although she was prescribed Abilify, she chose to discontinue the medication after a few weeks of use and did not return for outpatient follow-up. (*Id.*). Springer stated that she presented to a new psychiatrist in November 2009 and was prescribed Lithium, which she took intermittently. (*Id.*).

While at Windsor-Laurelwood, Springer's symptoms of depression, restlessness, and pressured speech responded positively to treatment. (Tr. 196). A mental status examination at the close of treatment showed Plaintiff had appropriate grooming and hygiene; her speech was less pressured; her mood was improved overall, with significant reduction of dysphoria; her thoughts were more cohesive, logical, and goal-oriented; she denied thoughts of harming herself; and her attention, concentration, insight, and judgment were improved. (Tr. 199). Upon her

5

discharge on January 18, 2010, Plaintiff's diagnoses remained the same, but her GAF score increased to 52, representing moderate symptoms. (Tr. 200). Her condition was described as stable and her long-term prognosis was fair. (Tr. 199).

On March 26, 2010, psychologist Joseph Konieczny, Ph.D., conducted a consultative examination of Springer. (Tr. 212). Plaintiff indicated that she had not used alcohol during the two months prior to the exam. (Tr. 213). She was cooperative throughout the evaluation, showed no indications of undue impulsivity, and had adequate motivation overall. (Tr. 213). Springer expressed herself in a clear and coherent manner while maintaining appropriate eye contact. (Tr. 214). Plaintiff described difficulties with sleep, but denied recent feelings of depression, which she struggled with from 2008 to January 2010. (*Id.*). She also denied thoughts of suicide, and showed no indications of nervousness, anxiousness, or unusual thought content. (*Id.*). Plaintiff stated that she resided by herself and performed routine daily household responsibilities. She occasionally attended Alcoholics Anonymous meetings, socialized with friends, and was regularly involved in church-related activities. (*Id.*).

Dr. Konieczny diagnosed "bipolar I disorder, most recent episode depressed, in partial remission." (Tr. 215). The doctor noted that with Plaintiff's history of alcohol abuse, consideration should be given to a diagnosis of alcohol abuse or dependence, but he did not have enough background information to make or rule out the diagnosis. (*Id.*). Dr. Konieczny drew the following conclusions as to Plaintiff's functional limitations: (1) her ability to concentrate and attend to tasks or to understand and follow directions was not impaired; (2) her ability to withstand stress and pressures and deal with the general public was moderately impaired; (3) and her overall level of judgment was not impaired, provided she was not in a manic phase, but her overall level of functioning was at a slightly reduced level of efficiency. (*Id.*). He indicated

6

Springer's "symptom severity" was at a GAF level 56, and her "functional severity" was a GAF level 70. (*Id.*).

On April 9, 2010, state agency consultative examiner David Dietz, Ph.D., performed a review of Plaintiff's mental health records and provided a mental residual functional capacity ("RFC") assessment. (Tr. 231-33). Dr. Dietz found Plaintiff would be moderately limited in the following areas: (1) her ability to complete a normal work-day and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace; (2) her ability to respond appropriately to changes in the work setting; and (3) her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 232). He found Plaintiff to be markedly limited in her ability to interact appropriately with the general public. (*Id.*). In all other functional abilities, Dr. Dietz opined that Plaintiff was either not significantly limited or there was no evidence of limitation. (Tr. 231-32). Despite these limitations, Dr. Dietz concluded Springer was "capable of performing a variety of tasks that did not have strict production standards or schedules and [involve] no more than superficial interaction with others." (Tr. 233). In January 2011, additional state agency reviewing consultants affirmed Dr. Dietz's mental RFC opinion. (Tr. 259-62).

On March 2, 2010, Plaintiff returned to Pathways and reported "things were hectic, but good." (Tr. 251). She denied depression and had been sober since January 10, 2010. (*Id.*). Mary Lieder, N.P., indicated Springer was "moderately ill" and emphasized compliance with medication and treatment. (Tr. 252). In July 2010, Pathways physician Elaine Campbell, M.D., observed Plaintiff's appearance, demeanor, thought process, perception, mood, behavior, and cognition were all within normal limits. (Tr. 243). Dr. Campbell indicated Plaintiff was "moderately ill." (Tr. 244). On October 7, 2010, Springer reported some depression. (Tr. 267).

7

In November 2010, Springer acknowledged that she was doing well and on a stable course, but experiencing some sleep difficulties. (Tr. 266).  Her mood and affect were stable and appropriate. (*Id.*).

During her February 2011 treatment with Pathways, Springer reported that, for the most part, she was doing well, with some depressed days. (Tr. 265).  She had "good functioning, but not optimal." (*Id.*).  On May 18, 2011, Plaintiff explained that she had been stable and no longer needed Seroquel for sleep.  (Tr. 264).  Her mood was well-controlled. (*Id.*).

On August 16, 2011, psychologist Praveen Abraham completed a psychological questionnaire. (Tr. 276-77).  The psychologist noted Plaintiff's initial examination at Pathways occurred in February 2009 and her diagnosis was type 1 bipolar disorder. (Tr. 276).  Dr. Abraham explained that "when she was ill [from approximately 2007 through 2010] . . . she was possibly delusional, her judgment was generally impaired, her thoughts were likely disorganized, and her behavior would have been reckless and impulsive.  She had episodes of depression with no motivation, poor energy, poor concentration, and suicidal thoughts." (*Id.*). Dr. Abraham indicated that Plaintiff was having a positive response to treatment, and it appeared that her symptoms had remitted. (*Id.*).  The doctor opined that Springer could currently sustain work, but during the time she had been ill, she had been incapable of working. (*Id.*).  He indicated that from 2007 to 2010, Plaintiff "at times likely could not perform simple tasks." (Tr. 277).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 10, 2008, the alleged onset date.

3. The claimant has the severe impairments of type I bipolar disorder, alcohol dependence, and cannabis abuse now in remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but that she is subject to multiple nonexertional limitations. Specifically, the claimant is limited to performing simple, routine, and repetitive work that does not involve arbitration, negotiation, or confrontation. She cannot direct the work of others or be responsible for the safety or welfare of others. The claimant cannot perform work requiring strict production quotas. She cannot perform piece rate work or assembly line work. Finally, the claimant is limited to superficial interaction with others.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 9, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

    . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2008, through the date of this decision.

(Tr. 14-21) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Springer asserts only one allegation of error. She maintains that the ALJ erred in evaluating the opinion of her treating psychiatrist, Dr. Abraham. In August 2011, Dr. Abraham completed a questionnaire regarding Springer's mental health and functional limitations. (Tr. 276-77). Dr. Abraham opined that Springer was currently capable of working. The ALJ gave

10

great weight to this portion of the doctor's opinion, and Plaintiff does not contest the ALJ's decision in this regard. (Tr. 19). However, in his report, Dr. Abraham also indicated that when Plaintiff was psychiatrically ill from 2007 to 2010, "at times she really could not perform simple tasks" and was incapable of working. (Tr. 276-77). Plaintiff argues that the ALJ incorrectly rejected this opinion, and as a result, the record does not support the ALJ's conclusion that Springer was capable of working from December 10, 2008 through December 31, 2010. It appears that Plaintiff concedes that she was not disabled after December 31, 2010.

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544, *see* 20 C.F.R. § 404.1527(c)(2)-(6). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating

source's opinion. 20 C.F.R. § 404.1527(c). Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

The parties do not challenge Dr. Abraham's status as a treating source, and the Court will assume such status for the purpose of this analysis. As a result, the relevant issue is whether the ALJ sufficiently complied with the mandates of the treating source rule in his opinion. The Court concludes that the ALJ did so.

In his opinion, the ALJ indicated that Dr. Abraham was Plaintiff's "treating psychiatrist," and evaluated the August 2011 medical source statement. (Tr. 18-19). The ALJ attributed "less weight" to the psychiatrist's opinion that Plaintiff would not have been able to perform simple tasks and was incapable of working when her symptoms were uncontrolled from 2007 through 2010. (Tr. 19). To support the decision to grant less weight to this portion of Dr. Abraham's opinion, the ALJ provided a number of good reasons. First, the ALJ correctly noted that "determining whether a claimant is disabled or otherwise incapable of working is a function reserved for the Commissioner." *See* 20 C.F.R. 404.1527(d); Social Security Ruling ("SSR"), 96-5p, 1996 WL 374183 (July 2, 1996). Accordingly, Dr. Abraham's conclusory opinion that Plaintiff could not work was not entitled to controlling weight.

Next, the ALJ explained that "the objective findings throughout the claimant's treatment record demonstrate that her most extensive periods of heightened symptomology occurred when she deviated from sobriety and were relatively short-lasting, which somewhat discredits Dr. Abraham's conclusion that the claimant could not previously have worked when her symptoms flared." (Tr. 19). Substantial evidence supports this reason for the ALJ discrediting Dr.

12

Abraham's opinion regarding Plaintiff's ability to perform simple tasks. As the ALJ noted, the evidence reflects that Plaintiff's symptoms were most heightened during when Plaintiff was using alcohol. (Tr. 19). Furthermore, these periods of heightened symptomology were short-lasting, with Plaintiff showing significant improvement when she abstained from alcohol. (*Id.*). For example, as the ALJ discussed in his opinion, upon admission for inpatient psychiatric treatment in January 2010, Plaintiff's diagnoses included alcohol withdrawal. (Tr. 18, 196, 205). Over the relatively short period of her inpatient treatment, Plaintiff responded positively to counseling and medication, and she showed notable improvement upon discharge, specifically in relation to her mood and stability. (Tr. 18, 198-9). Additionally, as the ALJ explained, Pathways treatment notes post-discharge showed that Plaintiff maintained sobriety and was consistently described as stable with a well-controlled mood throughout the remainder of 2010 and onward. (Tr. 18, 243, 251-52). Plaintiff argues that the ALJ failed to cite any specific evidence that would discredit Dr. Abraham's opinion. However, as just described, the ALJ discussed and cited to medical evidence which undermines Dr. Abraham's opinion.

In an attempt to support Dr. Abraham's opinion, Plaintiff points to treatment records from Pathways in February 2009 where providers noted she was "markedly ill." (Tr. 191). However, this conclusory statement, without more, does not suffice to bolster Dr. Abraham's opinion. Plaintiff points to no additional evidence that shows her mental impairments affected her functioning in the manner and to the degree that Dr. Abraham opined. Moreover, it does not appear Plaintiff had maintained sobriety around the time she was deemed markedly ill. After her February 2009 appointment at Pathways, Plaintiff failed to comply with follow-up treatment, discontinued use of prescribed medication (Tr. 203), and in November 2009, her next treatment at Pathways, reported using alcohol three to four times weekly and having three or four drinks on

13

each occasion. (Tr. 186). In contrast, when Plaintiff reported to Pathways in December 2009, she had abstained from alcohol for a month and expressed that she was feeling better and experiencing less depression. (Tr. 193). Plaintiff's examination that December resulted in largely insignificant findings, with her demeanor, thought process, perception, suicidal ideation, behavior, and cognition all within normal limits. (*Id.*).

Plaintiff also argues that while maintaining sobriety, she was still described as "moderately ill" (Tr. 244, 252); however, this evidence, on its own, is likewise insufficient to overcome the ALJ's conclusion that Dr. Abraham's opinion was partially inaccurate. Overall, the records reflect that Plaintiff's condition improved when Plaintiff was abstaining from alcohol. Accordingly, substantial evidence supports the ALJ's decision to give less weight to the portion of Dr. Abraham's opinion regarding her abilities prior to 2011.

Additionally, Plaintiff contends that the ALJ's analysis does not comply with the procedural requirements of the treating source doctrine, because the ALJ failed to state whether Dr. Abraham's opinion is supported by "medically acceptable clinical and diagnostic techniques" or is "inconsistent with other substantial evidence." Although the ALJ did not expressly make these findings in his opinion, any error on this ground does not mandate reversal.

If an ALJ does not strictly comply with the mandates of the treating source doctrine, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing *Wilson*, 378 F.3d at 547). A *de minimis* violation occurs "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (quoting *Wilson*, 378 F.3d at 547). *See also Friend v. Comm'r Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("[T]he procedural rule is not a procrustean bed,

14

requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, the ALJ's analysis of Dr. Abraham's opinion conveyed that ALJ found the opinion was not entitled to controlling weight. The ALJ expressly gave good reasons for his decision to attribute "less weight" to the portion of the psychiatrist's findings at issue here. One of those reasons was that the evidence contradicted Dr. Abraham's opinion that Plaintiff could not perform simple tasks for a period of time sufficient in duration to preclude her from employment. The undersigned was able to understand the ALJ's rationale for the weight attributed to Dr. Abraham's opinion and determine that substantial evidence supported the ALJ's conclusion. Thus, the ALJ's failure to indicate whether the opinion was supported by clinical and diagnostic findings or inconsistent with other evidence was harmless.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: April 18, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).